IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOHN D. WHITE, | § | |
|    Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:24-CV-427-P |
| | § | |
| DEE ANN MILLS, et al. | § | |
|    Defendants | § | |

## <u>FINDINGS, CONCLUSIONS, AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS</u>

Pending before the Court is Defendants Dee Ann Mills ("Mills") and Danielle Parsons ("Parsons") (collectively "Defendants")' Motion to Dismiss ("Motion") [doc. 6]. A hearing was held on the Motion on July 23, 2024. The Court, having carefully considered the parties' arguments, motion, response, and relevant applicable law, **RECOMMENDS** that Defendants' Motion be: (1) **GRANTED** as to the individual capacity claims against Defendants; (2) **GRANTED** as to White's equal protection claim against Defendants in their official capacities; and (3) **DENIED** as to White's due process and First Amendment claims against Defendants in their official capacities.

### I.   BACKGROUND[1]

*Pro se* Plaintiff John D. White ("White") filed a one-hundred-eighteen-page complaint against Defendants in both their individual and official capacities. Given the length and complexity of White's Original Complaint, the Court ordered White to specifically identify his causes of action. (ECF No. 10). In response, White submitted a written response at the hearing informing the Court that he brings this suit against Defendants under 42 U.S.C. Section 1983 for

---
[1] For the purposes of this Motion, the allegations contained in Plaintiff's complaint are taken as true.

violations of his: (1) Fourteenth Amendment right to procedural and substantive due process; (2) First Amendment right to expressive speech and association; and (3) Fourteenth Amendment right to equal protection under the law on the basis of gender and age, and, alternatively, as a class of one. (*See* ECF No. 13 at 2–8 (hereinafter "Pl.'s Sub.")).

Prior to 2023, White was employed as a high school English teacher and debate coach at Brock High School, a campus of Brock Independent School District. (Compl. at 3). On or about January 19, 2023, White "abruptly resigned from Brock High School" because he was suffering from health conditions related to his experience in Iraq as a Gulf War veteran.[2] (*Id.* at 4). Upon resigning his position, with the ultimate goal of returning to teaching, White sought medical treatment, started exercising to lose weight, obtained additional teaching certifications, and began a graduate level English program. (*Id.* at 5). Additionally, in an effort to assist the debate team, White continued to communicate—in person and via text message—with both male and female debate team students, attended various sporting events and debate competitions, and met with debate team students to assist them with their speeches. (*Id.* at 4–24). Thereafter, after receiving a complaint about White from a Brock teacher, the Defendants conducted a brief investigation. That investigation did not involve speaking with White or numerous other potential witnesses. At the conclusion of that investigation, on May 11, 2023, White received the following letter (hereinafter the "letter") from Defendants:

---

[2] The Court would like to thank Plaintiff for his service.

> Dear Mr. White:
>
> I am writing this letter to document your behavior on Brock ISD property and at Brock ISD events on Friday April 21, 2023. On this date, you attended the UIL debate competition where you:
>
> - Responded to the judges table when a Brock ISD coach was requested for rule clarification when you are not a Brock ISD UIL coach or employee
> - Singled out a female student and escorted her away from the group so you could talk about personal matters for more than forty-five minutes
> - Informed Brock ISD coaches you were planning to take a female student out to eat in your personal vehicle without prior parent or coach permission
> - Invited all students to leave in your personal vehicle to purchase snacks
> - Made the comment to Brock ISD students, "My wife wants to know why my best friends are teenage girls."
>
> Upon investigation of these events, it was also brought to the attention of the District that leading up to the UIL Debate on April 21, 2023, you also:
>
> - Discussed student speeches with them in a capacity of a coach after your resignation from Brock ISD
> - Invited Brock ISD students into a private group text message chat
> - Exchanged individual text messages with female students
> - Invited female students to meet with you at Starbucks to discuss their speeches after your resignation from Brock ISD
> - Attended sporting and extracurricular events of these same female students While all of these events did not take place on Brock ISD, these actions are clear violations of the Educators Code of Ethics. You are no longer an employee of Brock ISD and you may not act in the manner of one.
>
> While all of these events did not take place on Brock ISD, these actions are clear violations of the Educators Code of Ethics. You are no longer an employee of Brock ISD and you may not act in the manner of one.
>
> This letter is intended to serve as formal notice regarding the potential consequences should you exhibit similar behavior in the future.
>
> Specifically, the events of concern include your inappropriate behavior directed toward students at District events.
>
> Pursuant to Board Policy GKA(LEGAL), a school administrator, school resource officer, or school district peace officer may refuse to allow persons to enter on or may eject a person from property under the district's control if the person refuses to leave peaceably on request and:
>
> 1. The person poses a substantial risk of harm to any person; or
>
> 2. The person behaves in a manner that is inappropriate for a school setting and:
>
>    a. The administrator, resource officer, or peace officer issues a verbal warning to the person that the person's behavior is inappropriate and may result in the person's refusal of entry or ejection; and
>
>    b. The person persists in that behavior.
>
> Identification may be required of any person on property under the district's control." See Tex. Educ. Code § 37.105.
>
> As a former employee of the District, you are not to be on District property unless you have an educational need to be there. This includes District events on District property. Additionally, at District events not on school property, you are not to approach or communicate with students unless the parent is present and has provided you with permission, and the parent has confirmed permission with the coach or sponsor of the students involved in the event.

(*Id.* at 25).

On May 15, 2023, White responded to the letter by informing Defendants of what he felt were "factual flaws in the letter." (*Id.* at 27). White also demanded that Defendants retract the letter, send an apology, and issue a correction letter to everyone who received the letter. (*Id.*). Further, White sent Defendants Public Information Act requests on May 15, 2023, and May 16, 2023. (*Id.* at 28–29). Defendants never responded to White's letter, and they objected to White's production requests. (*Id.* at 27, 29–30). On August 9, 2023, after White appealed Defendants'

objections, the Texas Attorney General overruled Defendants' objections and Defendants produced some of the requested documents. (*Id.* at 30). On September 18, 2023, White filed a formal written complaint with the Attorney General's Office, which resulted in the production of additional documents from Defendants. (*Id.* at 31–32). Subsequently, on October 30, 2023, White filed another complaint with the Attorney General, which again yielded the production of new documents from Defendants. (*Id.* at 36). Because of White's multiple complaints, the Attorney General required Parsons to certify that she had complied and produced all responsive documents. (*Id.* at 37). Ultimately, White filed this present action on May 10, 2024, seeking injunctive relief as well as a monetary damages. (*See generally id.*).

## II.   LEGAL STANDARD

### A. Rule 12(b)(6)

Rule 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). This rule must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court. *See Twombly*, 550 U.S. at 545. Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Swierkiewicz v. Sorema NA.*, 534 U.S. 506, 513 (2002) (holding that Rule 8(a)'s simplified pleading standard applies to most civil actions). The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*,

550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).

The Court need not credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action." *Id.* Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments. A court is permitted, however, to rely on documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). In addition, the Court may consider a "written document that is attached to a complaint as an exhibit" as well as "documents attached to a motion to dismiss that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Tex. Health and Hum. Servs. Comm. v. U.S.*, 193 F. Supp. 3d 733, 738 (N.D. Tex. 2016) (citations are internal quotation marks omitted).

**B. Rule 12(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (quoting *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005)). With limited exceptions, the Eleventh Amendment proscribes private suits brought in federal court against a State, including its agencies or departments. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Immunity under the Eleventh Amendment deprives the court of subject matter jurisdiction, and this may be challenged in a motion under Rule 12(b)(1)

of the Federal Rules of Civil Procedure. *See, e.g., Ross v. Tex. Educ. Agency*, 409 F. App'x 765, 768 (5th Cir. 2011) (per curiam); *see also Pennhurst*, 465 U.S. at 98 ("[T]he principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III[.]"). The Court may dismiss for lack of subject matter jurisdiction on any one of the following: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts related to the subject matter jurisdiction issue. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981); *accord Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001).

A Rule 12(b)(1) motion that challenges the court's subject matter jurisdiction solely on the face of the complaint is a facial attack. *See Williamson*, 645 F.2d at 412. "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980); *see Williamson*, 645 F.2d at 412 (when Rule 12(b)(1) motion is facial attack, "the plaintiff is left with safeguards similar to those retained" on a Rule 12(b)(6)). Thus, if the plaintiff has sufficiently alleged jurisdiction, the court must deny the Rule 12(b)(1) motion. *See Patterson v. Rawlings*, 287 F. Supp. 3d 632, 637 (N.D. Tex. 2018).

### III.   ANALYSIS

In their Motion, Defendants argue that White's claims should be dismissed because White lacks standing to bring this suit, they are entitled to immunity,[3] and White has failed to sufficiently state a claim upon which relief can be granted. (Defendants' Motion to Dismiss ("Defs.' Mot.") at 4–12). In response, White asserts that Defendants are not entitled to immunity, that he has

---

[3] Specifically, Defendants assert that they are entitled to immunity under: (1) Texas Education Code Section 22.0511; (2) the qualified immunity doctrine; and (3) the Paul D. Coverdell Teacher Protection act of 2001 ("TPA").

standing, and that he has sufficiently stated a claim. (Plaintiff's Response ("Pl.'s Resp.") at 12–29). The Court's analysis will begin with White's official capacity claims before turning to the claims against Defendants in their individual capacities.

### A. White's Official Capacity Claims

Defendants' Motion acknowledges that White brings his claims against them in both their individual and official capacities, but does not distinguish their arguments. (Defs.' Mot. at 4 n.1). "Suits against state officials in their official capacity [] should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Thus, while Defendants may be entitled to immunity from suit in their individual capacities, those immunities do not apply to claims against them in their official capacities. Because Defendants' Motion does not claim any immunities for White's official capacity claims, the Court will address Defendants' non-immunity arguments for the purposes of the official capacity claims.

#### 1. Standing

The Court begins with Defendants' argument that White lacks standing to bring this suit because White has failed to plead an injury in fact or a fairly traceable connection between Defendants' actions and the alleged harm. (Defs.' Mot. at 3, 10–12). In his response, White does not address the merits of Defendants' argument but rather states:

> The spurious nature of their argument suggests that the entire motion was brought only for dilatory reasons. Mr. White's prior arguments demonstrate his entitlement to recover for compensatory damages. Nevertheless, section 1983 does not require a party to prove compensatory damages to have standing and allows nominal and punitive damages, as well as declaratory and injunctive relief, which Mr. White has sought, to rectify the Defendants deprivation of his citizenship rights and fully restore his reputation.

(Pl.'s Resp. at 29).

The threshold question is whether White has standing to sue Defendants in their official capacities. There are two types of standing: Constitutional Article III standing and prudential standing.[4] Article III standing is a "bedrock constitutional requirement that [is] applied to all manner of important disputes." *United States v. Texas*, 599 U. S. 670, 675 (2023). Standing is "built on a single basic idea—the idea of separation of powers." *Id.* (quotation marks omitted). By limiting who can sue, the standing requirement implements "the Framers' concept of the proper—and properly limited—role of the courts in a democratic society." J. Roberts, *Article III Limits on Statutory Standing*, 42 Duke L. J. 1219, 1220 (1993) (quotation marks omitted). The fundamentals of standing are well-known and firmly rooted in American constitutional law. To establish standing, a plaintiff must demonstrate: (1) that he has suffered or likely will suffer an injury in fact; (2) that the injury likely was caused or will be caused by the defendant; and (3) that the injury likely would be redressed by the requested judicial relief. *See Summers v. Earth Island Institute*, 555 U. S. 488, 493 (2009); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992). Those specific standing requirements constitute "an essential and unchanging part of the case-or-controversy requirement of Article III." *Id*. at 560.

The second and third standing requirements—causation and redressability—are often "flip sides of the same coin." *Sprint Communications Co. v. APCC Services, Inc*., 554 U.S. 269, 288 (2008). If a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury. Thus, the two key questions in most standing disputes are injury in fact and causation. First, an injury in fact must be "concrete," meaning that it must be real and not abstract. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). The injury also must be particularized; the injury must affect "the plaintiff in a personal and individual way" and

---

[4] Prudential standing, encompassing the general prohibition on a litigant's raising another person's legal rights, is not at issue in this case and, thus, will not be discussed.

not be a generalized grievance. *Lujan*, 504 U.S., at 560, n. 1. An injury in fact can be a physical injury, a monetary injury, an injury to one's property, or an injury to one's constitutional rights, to take just a few common examples. Moreover, the injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

"A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016). Thus, while an injury need not be tangible, it cannot be merely abstract or hypothetical. *Id.* at 339-41; *TransUnion LLC*, 594 U.S. at 424. Second, causation requires the plaintiff to establish that the alleged injury was likely caused or likely will be caused by the defendants' actions. The "line of causation between the illegal conduct and injury"—the "links in the chain of causation"—must not be too speculative or too attenuated. *Allen v. Wright,* 468 U.S. 737, 757–59 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

To determine whether White, who bears the burden, has established standing in this case, the Court will look to the "damages" section of White's complaint. In that section, White alleges that Defendants' actions resulted in the following damages: (1) White was forced to withdraw his applications to several school districts pending his attempts to clear his name; (2) White was "effectively excluded" "from participating in virtually all events within the Brock community;" (3) White was excluded from judging or coaching students at other school districts; (4) White was excluded from defending his personal and professional reputation at a board meeting; (5) "White [was barred] from discussing student speeches with them, texting students, meeting with students, and attending their sporting and extracurricular events, regardless of whether those activities occur

on or off District property and in disregard of consent by the students' parents;" and (6) the letter exacerbated White's medical conditions. (Pl.'s Compl. at 37–39).

White's first alleged injury, having to withdraw his applications, is insufficient to establish standing in this case. While it may be true that some school districts may not have hired him, it is too speculative to conclude what would have happened had White not voluntarily withdrawn his applications. *Allen,* 468 U.S. at 757–59 *abrogated on other grounds by Lexmark Int'l, Inc.*, 572 U.S. 118. Had White been rejected by every school that he applied to because of the letter, then White may have sufficiently established an injury for the purpose of standing. But that is not the case here, White was not forced to withdraw his applications, rather he did so based on his own speculation that the other school districts would see the letter and refuse to hire him. Consequently, the Court finds that White has failed to establish standing through the voluntary withdrawal of his applications because it is a speculative injury that cannot be redressed.

Next, White alleges that he was injured by the letter because it barred him from all district property and events, which "effectively excluded" "from participating in virtually all events within the Brock community" because "the District is, essentially, the community." (Pl.'s Compl. at 38). The Court finds that this alleged injury is also insufficient to establish standing. The letter does not absolutely ban him from district property and events. Rather, the letter is a "formal notice regarding the potential consequences" that White may face. (*See id.* at 25). Specifically, the letter reminds White of the school's authority to remove him from campus under certain circumstances and warns White that he should not be on campus without a good reason. But even if the letter did absolutely ban him from school property and events, as White contests that it does, it does not exclude him from the Brock community as he could still attend and participate in events put on by the city or any other non-district entity, regardless of whether students were present. Therefore,

10

White has failed to establish standing through his assertion that he was effectively barred from the community because it is not a concrete injury that can be remedied by the Court.

White's next alleged injury is that he cannot judge an event or coach for another school if there will be Brock students at the event. (*Id*. at 38–39). The letter does not explicitly prohibit White from judging events or coaching for another school district. In fact, the plaint text of the letter would allow White to judge or coach at an event held on Brock property as it would be "an educational need to be there." (*Id*. at 25). Further, the letter does not prohibit White from performing either of the aforementioned actions at events at which Brock students are present. The letter does not exclude White from being at the same event as Brock students, but rather, it requires him to seek parental consent before approaching and speaking with Brock students at those events. Accordingly, White has failed to establish standing through his assertion that he was effectively barred from judging events or coaching for another school because it is not a concrete injury that can be remedied by the Court.

Next, White alleges that he was injured because he was barred from attending school board meetings where he could defend his personal and professional reputation because those meetings were held on Brock ISD property. (*Id*. at 39). Defendants assert that White was "free to attend open governmental meetings" to defend his reputation, but "chose not to do so." (Defs.' Mot. at 11). The text of the letter provides: "you are not to be on District property unless you have an educational need to be there. This includes District events on District property." (Pl.'s Compl. at 25). While the letter does not define educational need, it is axiomatic that defending ones' public and professional reputation does not fall within that exception. Thus, a reasonable reading of the letter reveals that for White to attend a school board hearing for the purpose of defending his reputation he would be risking the enforcement of Section 37.105 against him. Consequently,

White has sufficiently alleged that the letter issued by Defendants chilled his speech in that he would be risking prosecution if he chose to attempt and defend his reputation at a school board meeting.

While the aforementioned alleged damage is sufficient to grant White standing, White also alleges that his medical conditions were exacerbated by the letter and that he suffered numerous constitutional violations.  (*Id*. at 39; *see generally id*.).  Both of these are also sufficient to confer standing.  *See Meese v. Keene,* 481 U.S. 465, 473 (1987) (holding that a free speech violation giving rise to a reputational injury is an injury in fact); *see also Sims v. Young*, 556 F.2d 732, 734 (5th Cir. 1977) (providing that mental anguish stemming from public censure, like a reputational injury, is sufficient to confer standing).  Therefore, at this stage, the Court finds and concludes that White has sufficiently alleged an injury in fact that is fairly traceable to Defendants' actions such that he has established standing.  Because White has sufficiently alleged damages to establish standing, the Court will now turn to Defendants' argument that he has failed to state a claim upon which relief can be granted.

### 2.  White has failed to sufficiently plead his equal protection claim

As discussed above, White brings claims against Defendants for violations of his due process rights, equal protection rights, and First Amendment rights.  Specifically, White alleges that Defendants violated his: (1) Fourteenth Amendment due process rights by issuing a letter containing statements they knew to be defamatory and false—thereby harming his liberty interest in his reputation—without notice, hearing, or proper investigation; (2) First Amendment right to free speech and association by preventing him from defending himself at school board meetings and interacting with Brock students; and (3) Fourteenth Amendment right to equal protection by discriminating against him based on his age and gender.  (Pl.'s Compl. at 42–115).  Defendants' Motion asserts that White's claims should be dismissed because he failed to state a claim upon

12

which relief can be granted. (Defs.' Mot. at 5). Defendants' argument section regarding this issue states in its entirety:

> Plaintiff alleges Defendants wrongfully discriminated against him "based on [his] status as a middle-aged male communicating with a teenage female." [Doc. 1 at 213]. But in short, Plaintiff fails to allege sufficient facts to constitute a plausible violation of any legitimate constitutional right. That alone warrants dismissal under Rule 12(b)(6). *White v. Texas*, 2023 WL 8074126 at *3 ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.").
>
> But even more directly, one critical fact summarily negates Plaintiff's case: "On January 19, 2023, Mr. White abruptly resigned from Brock High School." [Doc. 1 at ¶ 9]. As Plaintiff pleaded, he voluntarily resigned from employment with Brock High School. Plaintiff complains at length that he was wrongfully denied access to students after his resignation, but that does not negate the fact that a non-teacher member of the public does not have a constitutional right to access students via school property or school-sponsored events. Without pleading a violation of a legitimate constitutional right, all of Plaintiff's Section 1983 claims fail. *See, e.g., Thomas v. State*, 294 F. Supp. 3d 576, 610 (N.D. Tex. 2018) ("Section 1983 does not provide a cause of action for conspiracy to deny civil rights unless there is an actual violation of civil rights."). Therefore, Plaintiff failed to state a claim to relief that is plausible on its face.

(*Id.*)

A review of Defendants' argument section reveals that their arguments only address White's equal protection claim. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To properly raise an equal protection claim, a plaintiff must set forth allegations which, if proved, demonstrate that "he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from discriminatory intent." *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir. 2004). A "[d]iscriminatory purpose in an equal protection context implies that the decision-maker selected a particular course

13

of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995) (quoting *United States v. Galloway*, 951 F.2d 64, 65 (5th Cir. 1992)). Similarly, a class-of-one equal-protection claim requires White to "show that (1) he [] was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment." *Rountree v. Dyson*, 892 F.3d 681, 685 n.10 (5th Cir. 2018) (citing *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000))).

In this case, the crux of White's equal protection claim is that Defendants conducted a pretextual investigation before issuing a warning letter, which contains false allegations designed to harm his reputation, based on the fact that he is a middle-aged man that was communicating with teenage girls. (Pl.'s Compl. at 105–11). In support of this assertion, White cites to Defendants' investigatory notes which contain the following statement: "communication btwn [sic] grown man & child . . . error on side of caution to keep kids safe." (*Id.* at 106). As discussed above, Defendants argue that White has failed to state a claim upon which relief can be granted because he has failed to allege sufficient facts to show discrimination and he does not have a constitutional right to access school children on campus. (Defs.' Mot. at 5). In response, White points to the aforementioned note, the alleged false statements in the letter, and offers some examples to show that he was treated differently than similarly situated individuals. (Pl.'s Resp. at 20–26).

The Court finds that White has failed to sufficiently plead his equal protection claim. It is axiomatic and undisputed that school administrators, like Defendants in this case, have a duty to protect students. Further, as a former employee, White has no right to be on school property or to be at school sponsored events without permission or a valid educational reason to be there. *See*

*Vukadinovich v. Board of School Trustees of Michigan City Area Schools*, 978 F.2d 403, 409, 78 Ed. Law Rep. 269 (7th Cir. 1992) (internal citations omitted) (holding that a former school employee, who frequented school events and met with students, had no constitutional right to be on school property). Additionally, there are numerous state and federal laws which make it illegal for adults to have inappropriate relationships with minors. While the Court is in no way insinuating that White was involved in any such relationship, those factors play into the Court's consideration of whether White has provided examples to show that he was treated differently than similarly situated individuals based on his age or gender, or, as a class of one.

Here, White has not, and cannot, provide examples to show that he was treated differently than similarly situated individuals. In his response, White cites to two instances involving female teachers that occurred after his resignation from Brock. (Pl.'s Resp. at 25). The first involved a female teacher who physically assaulted another teacher and a student but received "no public sanction." (*Id.*). The second involved a female teacher who failed to report an inappropriate relationship between another teacher and a student. (*Id.*). As a preliminary matter, the female teachers are not similarly situated individuals because at the time the letter was issued, White was not a school employee but rather a member of the general public. Regardless, even if that was not the case, the two examples given fail to satisfy White's burden. While they may stand for the general proposition that some female teachers were treated more preferentially then White, they are not sufficiently similar. Had White provided an example showing that a female member of the public or another former teacher was treated differently than he was despite similar facts, then he may have met his burden. However, that is not the case here, as a failure to report an inappropriate relationship and physical assault—while egregious—are not analogous to this case. Consequently, the Court finds that White has failed to adequately plead facts to show that he was treated

differently than other similarly situated individuals based on his age and gender, or as a class of one. Thus, the Court concludes that White has failed to state his equal protection claim and that Defendants' Motion should be **GRANTED** as to that claim.[5]

### B. White's Individual Capacity Claims

As discussed above, the threshold question is whether White has standing to sue Defendants in their individual capacities. Thus, if Defendants can establish that they are entitled to immunity from suit then there is no case or controversy, and because there is no "case or controversy there is no standing, and without standing, no subject matter jurisdiction." *Machetta*, 726 F. App'x at 220 (citing *Ruiz v. Estelle*, 161 F.3d 814, 829 (5th Cir. 1998)).

For the reasons set out below, the Court's analysis of White's individual capacity claims begins and ends with the question of whether Defendants are entitled to qualified immunity. The doctrine of qualified immunity "protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Anderson v. Valdez*, 845 F.3d 580, 599 (5th Cir. 2016). "This immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* "Accordingly, we do not deny immunity unless 'existing precedent [has] placed the statutory or constitutional question beyond debate.'" *Id.* at 599–600 (citation omitted). To defeat qualified immunity, Plaintiffs must show: "(1) that the official violated a statutory or constitutional right; and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* at 600.

"If the defendant's actions violated a clearly established constitutional right" courts examine "whether qualified immunity is still appropriate because the defendant's actions were

---

[5] While Defendants provide no argument as to White's First Amendment and due process claims, the Court finds and concludes that White has sufficiently pled those claims for the purposes of this motion. Thus, to the extent Defendants' Motion was intended to address those claims, it should be **DENIED**.

16

objectively reasonable in light of law which was clearly established at the time of the disputed action." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (internal quotations omitted). Courts must focus on the state of the law at the time of the incident and whether it provided fair warning to the defendant that his conduct was unconstitutional. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). The caselaw must establish beyond debate that the state actor's conduct violated then-clearly established law. *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020). Plaintiffs must "identify a case in which [a state actor] acting under similar circumstances was held to [have committed a constitutional violation] and explain why the case clearly proscribed the conduct of the officer." *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020). "It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality." *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (quotations and citation omitted).

In his response, White points to *Netflix, Inc. v. Babin* to satisfy his burden of providing a case which establishes beyond debate that Defendants' actions violated clearly established law. 641 F. Supp. 3d 319 (E.D. Tex. 2022), *aff'd*, 88 F.4th 1080 (5th Cir. 2023). *Babin* involved repeated meritless and retaliatory prosecutions. *Id.* at 326–27. In *Babin*, the District Attorney for Tyler County ("the Tyler DA") sought and received a grand jury indictment against Netflix for the "promotion of lewd visual material depicting child" in its film "Cuties." *Id.* at 327. When Netflix moved to dismiss the state prosecution on First Amendment grounds, the Tyler DA agreed, but then immediately issued four new child pornography indictments against Netflix for intentionally and knowingly promoting a performance that included sexual conduct by a minor. *Id.* Each of the new indictments corresponded to a different actress in Cuties, including an actress who the Tyler DA knew was over the age of eighteen when Cuties was filmed. *Id.* at 336–37. Taken together, the district court concluded that these suspicious circumstances indicated that "at least

17

one of the New Indictments were brought without any hope of obtaining a valid conviction" and that the bad faith prosecution exception applied. *Id.* at 337–38.

*Babin* is easily distinguishable from this case. Here, taking everything White says as true, Defendants issued him a notice letter containing factual misrepresentations after failing to thoroughly investigate those allegations and without due process. The differences are numerous, but just to name a few: (1) Defendants are school administrators and not prosecutors; (2) Defendants did not file numerous criminal charges against White, rather they sent him a notice letter; and (3) Defendants did not withdraw the letter for being incorrect and then immediately reissue it. Consequently, the Court finds that *Babin* does not satisfy White's burden of providing a case which establishes beyond debate that Defendants' actions violated clearly established law. However, because White is proceeding *pro se*, at the hearing, the Court gave White the chance to provide different cases which he felt would carry his burden. In fact, to give him every opportunity to prepare, the Court issued a notice to the parties on July 16, 2024, stating: "In addition to *Netflix v. Babin*, are there any other cases which Plaintiff can cite to support his assertion that Defendants violated clearly established law for the purposes of qualified immunity." (ECF No. 10).

At the July 23, 2024 hearing, White admitted that there are no cases sufficiently similar to the facts presented in this case. However, White cited to multiple cases to support his proposition that he does not need to provide a case that is substantially on point, as the law establishes that no reasonable administrator could have believed that Defendants' actions were reasonable in light of the circumstances. (See Pl.'s Sub. at 2–7). Fifth Circuit precedent is clear, in order for the Court to determine whether Defendants actions were objectively reasonable it must first find that Defendants violated clearly established law. *See, e.g., Brown*, 623 F.3d at 253. For the Court to find that Defendants actions violated clearly established law, Plaintiff must "identify a case in

which an officer acting under similar circumstances was held to [have committed a constitutional violation]." *Joseph on behalf of Estate of Joseph*, 981 F.3d at 345. Thus, even though the Court finds that White has sufficiently alleged constitutional violations and damages, White still bears the burden of pointing the Court to a case in which the Court found a constitutional violation under sufficiently similar circumstances.

Because White has failed to identify such a case—and the Court cannot find any—White has failed to carry his burden of establishing that Defendants violated clearly established law. Consequently, the Court concludes that Defendants are entitled to qualified immunity for White's individual capacity claims.[6] Because Defendants are entitled to qualified immunity there is no case or controversy, and because there is no "case or controversy there is no standing, and without standing, no subject matter jurisdiction." *Machetta*, 726 F. App'x at 220 (citing *Ruiz v. Estelle*, 161 F.3d 814, 829 (5th Cir. 1998)). Accordingly, the Court recommends that Defendants' Motion be **GRANTED** with regard to the individual capacity claims against Defendants.

## RECOMMENDATION

For the reasons set out above, the Court **RECOMMENDS** that Defendants' Motion be: (1) **GRANTED** as to the individual capacity claims against Defendants; (2) **GRANTED** as to White's equal protection claim against Defendants in their official capacities; and (3) **DENIED** as to White's due process and First Amendment claims against Defendants in their official capacities.

---

[6] While Defendants are entitled to qualified immunity for White's individual capacity claims, the Court finds that Defendants are not entitled to the other immunities raised in their Motion. First, Defendants, nor the Court, are able to find a case in which Texas Education Code Section 22.0511 has been applied to a case involving only federal causes of action. Thus, the Court declines to find that immunity under the Texas Education Code is appropriate in this case. Second, the Court finds that Defendants are not entitled to immunity under the TPA at this stage as White has explicitly pled that Defendants acted willfully, intentionally, or with a reckless disregard for his rights. For the purposes of this Motion, that allegation serves to overcome Defendants' assertion of immunity under the TPA. See 20 U.S.C. §§ 7941, *et seq.* (providing that teachers are immune from liability when, inter alia, they did "not act willfully, recklessly, or with a conscious flagrant indifference to the rights or safety of the individual allegedly harmed.").

### **NOTICE OF RIGHT TO OBJECT TO PROPOSED**
### **FINDINGS, CONCLUSIONS AND RECOMMENDATION**
### **AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections to 14 days).

### **ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **August 15, 2024,** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed, and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

SIGNED August 1, 2024.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE